IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:15-CV-96-BR

JOHN T. MARTIN,

    Plaintiff,

v.

BIMBO FOODS BAKERIES
DISTRIBUTION, LLC; and BIMBO FOODS
BAKERIES DISTRIBUTION, INC., f/k/a
GEORGE WESTON BAKERIES
DISTRIBUTION, INC.,

    Defendants.

ORDER

    This matter comes before the court on defendant Bimbo Foods Bakeries Distribution, LLC, f/k/a Bimbo Foods Bakeries Distribution, Inc., f/k/a George Weston Bakeries Distribution, Inc.'s ("defendant") motion to dismiss.[1] (DE # 11.) Plaintiff John T. Martin ("plaintiff") filed a response, (DE # 14), to which defendant replied, (DE # 17). This matter is ripe for disposition.

## I. BACKGROUND

    In 2006, plaintiff, as an "independent operator," purchased for $108,000 a distribution route which granted him exclusive rights to purchase bakery products from defendant and sell those products to grocery store chains and other customers within a designated territory. (Compl., DE # 1-1, ¶¶ 5-7.) At the same time, he entered into a Distribution Agreement

---

[1] Although plaintiff has sued defendant as both a corporation and limited liability company, this case involves only one defendant. In December of 2013, Bimbo Foods Bakeries Distribution, Inc. was converted into a limited liability company — Bimbo Foods Bakeries Distribution, LLC. (DE # 12-1.) Plaintiff acknowledges this by repeatedly referring to a singular "defendant" in his memorandum in opposition to the instant motion. (DE # 14.)

("Agreement") with defendant and was "to be paid on a percentage of sales or a margin on the sale of product." (Case No. 5:14-CV-17-BR, Compl., DE # 1-1, ¶ 8 & Ex. 1.)[2]

In June 2013, defendant informed plaintiff and other local independent operators that it was reducing the margins to be paid to them. (Id. ¶ 10.) Plaintiff and most of the other independent operators "united in an effort to fight the Defendant's effort to unilaterally reduce margins." (Id. ¶ 12.) On 21 December 2013, defendant issued to plaintiff a "Notice of Termination of Distribution Agreement" which alleged that plaintiff had created false sales and "buyback" invoices in order to reflect that he had made deliveries which he in fact did not make. (Id. ¶ 24 & Ex. 5.) Plaintiff subsequently filed suit challenging the termination of the Agreement and seeking a preliminary injunction to enjoin defendant from interfering with the operation of his distribution route. Martin v. Bimbo Food Bakeries Distrib., Inc., No. 5:14-CV-17-BR (E.D.N.C. 2014). This court denied plaintiff's motion for a preliminary injunction.[3] (Id., DE # 40.)

The Agreement permitted plaintiff to sell his route "during the first 90 days following the termination of the . . . agreement." (Compl., DE # 1-1, ¶ 11.) Plaintiff elected not to do so in light of his motion for a preliminary injunction which was pending at that time. (Id.) Defendant proceeded to operate plaintiff's route on his behalf "for a period of approximately eight months." (Id. ¶¶ 13, 15.) Based on approximate historical earnings of $7,000 per month in the operation of his route, plaintiff estimates he would have earned $56,000 during those eight months. (Id. ¶¶ 12, 15.) Instead of turning over to plaintiff any profits garnered from the operation of his route,

---

[2] As explained below, this lawsuit is closely related to another case between these two parties which is pending before this court: Martin v. Bimbo Food Bakeries Distrib., Inc., No. 5:14-CV-17-BR. In his complaint in the instant case, plaintiff explicitly incorporated by reference and attached as an exhibit his complaint in the prior action. (DE # 1-1, ¶ 8.) Accordingly, the court will consider relevant allegations included in the prior complaint.
[3] In the first case, plaintiff's breach of contract and unfair and deceptive trade practices claims remain pending before this court. (No. 5:14-CV-17-BR, DE # 53.)

defendant "charged the Plaintiff $26,918.00 . . . ." (Id. ¶ 16.)  Defendant subsequently sold the rights to plaintiff's route "without any approval whatsoever from the Plaintiff" for $135,581.  (Id. ¶ 19 & Ex. 3.[4])

On 5 February 2015, plaintiff filed this action in state court asserting claims for breach of contract, negligence, fraud, breach of fiduciary duty, and unfair and deceptive trade practices. (Compl., DE # 1-1, ¶¶ 35-52.)  On 11 March 2015, defendant removed the case to this court. (DE # 1.)  Now, pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant moves to dismiss plaintiff's complaint in its entirety.

## II.  LEGAL STANDARD

Rule 12(b)(6) permits a court to dismiss an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a claim, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A 12(b)(6) motion should only be granted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).  However, a complaint that proffers only "a formulaic recitation of the elements of a cause of action" with no "further factual enhancement" is insufficient.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).  To survive dismissal, a party must come forward with "enough facts to state a claim to relief that is plausible on its face."  Id. at 548.  The plausibility standard is met "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  The court must accept as true all well-pleaded allegations and must draw all reasonable factual inferences in favor of the plaintiff.  See

---

[4] Plaintiff has identified two separate exhibits as "Exhibit 3."  Here, the court refers to Exhibit 3 identifying the Bill of Sale.  (DE # 1-1, at 86-89.)

Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005); Myan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  Additionally, the court may consider exhibits that plaintiff attached to his complaint.  See United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004).  If allegations in the complaint are inconsistent with an exhibit, the exhibit controls.  Id. (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)).

### III.  DISCUSSION[5]

#### A.  Consolidation of cases

As noted previously, plaintiff has a related suit against defendant pending in this court in which he asserts claims arising out of the alleged wrongful termination of the Agreement. Defendant urges the court to dismiss the present suit for being entirely duplicative of the prior case, or, in the alternative, to stay this case or consolidate it with the first case.  (DE # 12, at 7-10, 17.)  Plaintiff also requests that the court consolidate this case with his prior case.  (DE # 14, at 29.)

As the Fourth Circuit Court of Appeals has recognized, the abstention doctrine that the Supreme Court articulated in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976), "permits dismissal of duplicative federal action when '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' clearly favors abstention."  Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 463 (4th Cir. 2005) (quoting Colorado River) (alteration in original) (emphasis omitted).  However, dismissal of a duplicative suit is not required, as a court may

---

[5] The parties present arguments that are almost identical to those presented in the briefs addressing the motion to dismiss in Ramsey v. Bimbo Foods Bakeries Distrib., LLC, No. 5:15-CV-6-BR (E.D.N.C. 2015) (subsequently consolidated with Ramsey v. Bimbo Foods Bakeries Distrib., LLC, No. 5:14-CV-26-BR (E.D.N.C. 2014)). Accordingly, apart from the differing facts of which the court takes note, the court's analysis in the instant order is significantly similar to its analysis in its order addressing defendant's motion to dismiss in Ramsey.  (No. 5:15-CV-6-BR, DE # 19.)

permissibly consolidate the two actions. See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 452 F. Supp. 2d 621, 626 n.2 (D. Md. 2006) (citing Curtis v. Citibank, N.A., 226 F.3d 133, 139 (2d Cir. 2000)).

The court concludes that dismissal of the instant case on the ground that it duplicates the prior case is unwarranted. Any risk posed by duplicative litigation is cured by consolidation of this case with the prior case, No. 5:14-CV-17-BR. See First Fin. Sav. Bank, Inc. v. Am. Bankers Ins. Co. of Fl., 699 F. Supp. 1164, 1166 (E.D.N.C. 1988) ("[A]ny potential risk of duplicative proceedings can be eliminated if the court consolidates [the two] actions.") (citing I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1552 n.13 (11th Cir. 1986); Walton v. Eaton Corp., 563 F.2d 66 (3d Cir. 1977)). Accordingly, to the extent plaintiff's complaint survives defendant's motion to dismiss, the court will consolidate it with Case No. 5:14-CV-17-BR.[6]

**B. Choice of law**

The parties included a choice of law provision in the Agreement which states, "The validity, interpretation and performance of this Agreement shall be controlled by and construed in accordance with the laws of the Commonwealth of Pennsylvania." (Compl., DE # 1-1, Ex. 1, § 11.8.) Sitting in diversity, this court must apply the substantive law of the forum state —here, North Carolina—including the state's choice of law rules. Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999). The North Carolina Supreme Court "has held that where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." Tanglewood Land Co. v. Byrd, 261 S.E.2d 655, 656 (N.C. 1980). Further, where a plaintiff's tort claims bear a close relationship to the contract, the choice of law provision may cover such claims. See

---

[6] On 7 April 2015, plaintiff filed a motion to consolidate his two pending lawsuits with two pending lawsuits of Richard Ramsey, another distributor for defendant whose distribution agreement was terminated. That motion will be addressed in a separate order, as it is not yet ripe for disposition.

5

Hitachi, 166 F.3d at 628. Generally, however, North Carolina courts apply the *lex loci delicti* doctrine to actions sounding in tort, which requires application of the law of the state where the injury occurred. See Boudreau v. Baughman, 368 S.E.2d 849, 854 (N.C. 1988). If the laws of the two states at issue are the same, the court does not need to address the choice of law issue. See Caper Corp. v. Wells Fargo Bank, N.A., No. 7:12-CV-357-D, 2013 WL 4504450, at *5 (E.D.N.C. Aug. 22, 2013) (citing Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 600-01 (4th Cir. 2004)).

Here, plaintiff has asserted five causes of action: 1) breach of contract; 2) negligence; 3) fraud; 4) breach of fiduciary duty; and 5) unfair and deceptive trade practices. (Compl., DE # 1-1, ¶¶ 35-52.) The choice of law provision, on its face, establishes that Pennsylvania law will govern plaintiff's breach of contract action, and the court will give effect to such intent of the parties. In addition, the court finds that the parties' choice of law provision is immaterial to the disposition of plaintiff's tort claims, as Pennsylvania and North Carolina law require the same outcome. Accordingly, the court will apply North Carolina law to plaintiff's tort claims.

C. **Breach of contract claim**

Plaintiff alleges that defendant breached § 8.4 of the Distribution Agreement by charging him unreasonable expenses when operating his distribution route on his behalf, (id. ¶ 16), and by failing to sell his distribution rights at the best price, (id. ¶ 24).

Section 8.4 of the Agreement reads:

> **ACTIONS FOLLOWING TERMINATION:** Termination under §8.2 or §8.3 above shall entitle [defendant] to operate the business for the account of the [plaintiff], deducting from the revenues generated the reasonable expenses of such performance and delivering the balance, if any, to [plaintiff]. Termination shall require [plaintiff] to sell the Distribution Rights, and in the event that [plaintiff] has not consummated a sale to a qualified purchaser within 90 days of the date of termination, [defendant] shall be authorized to sell [plaintiff's] Distribution Rights to a purchaser at the best price which can be obtained after proper notice and

advertisement. Said sale shall be for the account of the [plaintiff], and the provisions of §6.3 and §6.4 hereof shall apply.

(Id., Ex. 1 (emphasis in original).)

In Pennsylvania, a breach of contract claim has three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). In its instant motion, defendant only challenges plaintiff's allegations regarding the second element — namely, whether plaintiff has properly alleged that defendant breached a duty imposed by the Agreement.

Plaintiff alleges that defendant charged him unreasonable expenses while operating his distribution route in violation of § 8.4 of the Agreement. (Compl., DE # 1-1, ¶ 16.) As noted above, he alleges that defendant operated his route for approximately eight months and that he would have earned $56,000 during that time. (Id. ¶ 15.) Plaintiff further alleges that defendant "took all the income or margins which [his] route produced in the approximate sum of $56,000.00 and, in addition, [] charged [him] $26,918.00 for operating his route." (Id. ¶ 16.) While plaintiff concedes that the Agreement permitted defendant to charge plaintiff the reasonable expenses of operating his route, he contends that defendant's $26,918 expense charge and failure to earn any profit was "totally unreasonable." (Id.)

In response, defendant argues that "Plaintiff fails to plead any fact which would show that the operation of the business, and the amounts charged by [defendant] for that operation over 8 months, were not entirely proper and reasonable." (DE # 12, at 12 (emphasis in original).) Assuming the accuracy of plaintiff's numbers, defendant calculates that it ran the business at a weekly cost of $2,303. (DE # 17, at 4.) Defendant

7

contends that plaintiff has failed to adequately plead that defendant's expenses, which "include the cost of renting a truck, . . . paying a third party to actually operate the business, . . . gas, insurance, and maintenance," were not reasonable. (Id.)

Plaintiff further alleges that defendant breached the Agreement by not procuring the "best price" in the sale of his distribution rights and argues that "Defendant knowingly calculated the value of his route erroneously . . . ." (Compl., DE # 1-1, ¶ 24; DE # 14, at 4.) The Bill of Sale indicates that defendant sold plaintiff's distribution rights for $135,581. (Id., Ex. 3.) In his complaint in his first case, plaintiff estimated that his business was "worth in excess of $140,000." (Case No. 5:14-CV-17-BR, Compl., DE # 1-1, ¶ 9.) Defendant contends that plaintiff provides only "bare conclusory statements" in support of his claim that defendant failed to obtain the "best price" when selling plaintiff's distribution rights. (DE # 12, at 11.) It argues that "[p]laintiff presents no facts to suggest [that $135,581] was not a fair price . . . ." (Id.)

The court concludes that plaintiff's complaint sufficiently alleges that defendant breached § 8.4 of the Distribution Agreement by charging plaintiff unreasonable expenses in the operation of his route and by failing to procure the best price in the sale of his distribution rights. The facts alleged by plaintiff make his claim plausible, and amount to more than bare conclusory statements.

First, plaintiff alleges that defendant operated his route in excess of eight months at a loss of $26,918. In light of plaintiff's allegation that his route should have earned $56,000 during that time frame, he has sufficiently alleged that defendant charged him unreasonable expenses in violation of § 8.4 of the Agreement. Second, plaintiff alleges an almost $5,000 difference between the estimated value and the actual sale price of his

distribution rights. Section 8.4 of the Agreement obligated defendant to sell plaintiff's distribution rights "at the best price which can be obtained," not merely at a "fair" or "reasonable" price. (Compl., DE # 1-1, Ex. 1.) Plaintiff's complaint sufficiently alleges that $135,581 was not the "best price."

D. **Plaintiff's tort claims**

Defendant argues that the economic loss rule bars plaintiff's tort claims. (DE # 12, at 13.) Plaintiff counters that the "rule is confined to cases involving the sale of goods or products liability," and, thus, inapplicable to this case where the Agreement "involve[s] a hybrid mix of goods, rights and services . . . ." (DE # 14, at 17, 19.)

"North Carolina courts have developed (and the Fourth Circuit has applied) the economic loss rule, which prohibits recovery for purely economic loss in tort when a contract . . . operates to allocate risk." Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009) (internal quotation omitted). "To pursue a tort claim and a breach of contract claim concerning the same conduct, a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." Id. (internal quotation omitted). Further, a court should construe narrowly the existence of an independent tort. See Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998) ("North Carolina has recognized an independent tort arising out of breach of contract only in carefully circumscribed circumstances." (internal quotation omitted)). Additionally, despite plaintiff's argument to the contrary, the economic loss rule properly extends to cases beyond those involving the sale of goods or products liability. See Colon v. Bimbo Foods Bakeries Distribution, Inc., No. 5:14-CV-361-D, 2014 WL 5509249, at *2 (E.D.N.C. Oct. 31, 2014) ("[T]he economic loss rule defeats plaintiffs' breach of fiduciary duty claim."); Akzo Nobel Coatings Inc. v. Rogers, No. 11 CVS 3013, 2011

WL 5316772, at *17 (N.C. Super. Nov. 3, 2011) ("[T]he 'economic loss rule' routinely operates to bar tort claims that 'piggyback' breach of contract claims outside of the products liability context.").

### 1. Negligence and breach of fiduciary duty

Plaintiff alleges that "Defendant[] owed a duty to [him] to operate his route in a proper and businesslike manner so as to make a profit . . . and not create a loss," and that "Defendant[] breached [that] duty . . . by carelessly and negligently operating Plaintiff's route, as purported agent of the Plaintiff . . . ." (Compl., DE # 1-1, ¶¶ 39-40.) Plaintiff further alleges that the Agreement appoints defendant as plaintiff's agent, and, thus, defendant "had a fiduciary duty to act in the Plaintiff's best interest and not in [its] own best interest," which it breached. (Id. ¶¶ 47-48.)

The court concludes that the economic loss rule bars plaintiff's negligence and breach of fiduciary duty claims. First, plaintiff has alleged purely economic damages. Second, each claim arises out of defendant's performance under the terms of the contract. Any duty that defendant owed plaintiff regarding the operation and sale of his distribution route is contractually-based. Thus, these claims are not truly independent of the breach of contract action and will be dismissed. Plaintiff must pursue a remedy in contract for these alleged breaches.

### 2. Fraud

The court need not reach the issue of whether the economic loss rule bars plaintiff's fraud claim, as the court concludes that plaintiff has failed to adequately plead all the elements of such claim.

To state a claim for fraud in North Carolina, plaintiff must allege: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made

10

Case 5:15-cv-00096-BR   Document 18   Filed 04/24/15   Page 10 of 14

with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injury party." Ragsdale v. Kennedy, 209 S.E.2d 494, 500 (N.C. 1974).

In his complaint, plaintiff alleges that:

> Defendant[] [has] made false statements to the Plaintiff relative to the reasonable costs of operating Plaintiff's distribution route, . . . with regard to the calculation of the value of Plaintiff's route at the time that it was sold, . . . and . . . relative to the amount of money that was due the Plaintiff in connection with the sale of the route . . . . The Defendant[] intended for Plaintiff to rely upon such false statements which were made for the purpose of misinforming the Plaintiff and for the purpose of receiving money to which Defendant[] [was] not entitled, all for the purpose of committing fraud upon the Plaintiff.

(Compl., DE # 1-1, ¶ 30.) The court finds this insufficient to state a plausible claim of fraud, as plaintiff has failed to allege that he was ever in fact deceived by defendant's alleged false statements. Accordingly, his fraud claim will be dismissed.

E. **Unfair and deceptive trade practices claim**

Defendant contends that the economic loss rule bars plaintiff's unfair and deceptive trade practices claim and, alternatively, that plaintiff has failed to allege any unfair or deceptive trade practice which would expose defendant to liability. (DE # 12, at 13, 16.)

"In order to state a claim under the [North Carolina Unfair and Deceptive Trade Practices Act], a plaintiff must show (1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 787 (4th Cir. 2012) (internal quotation omitted). Whether an act rises to the level of unfair or deceptive is a question of law for the court to determine. See, e.g., Tucker v. Boulevard at Piper Glen LLC, 564 S.E.2d 248, 250 (N.C. Ct. App. 2002). For an act to fall under the statute's purview, it "must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Kelly, 671 F. Supp. 2d at 798-99. It is well-settled that a simple breach of contract claim does not amount to

11

an unfair or deceptive act under the statute, "absent substantial aggravating circumstances." See, e.g., Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch, 80 F.3d 895, 903 (4th Cir. 1996) (internal quotation omitted). Aggravating factors may be found "in the circumstances" of the breach of the contract. Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989).

To begin, the court declines to apply the economic loss rule to plaintiff's Unfair and Deceptive Trade Practices Act ("UDTPA") claim. Defendant cites Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d 614, 625 (M.D.N.C. 2006), for the proposition that the economic loss rule bars UDTPA claims. (DE # 12, at 13.) While that court found that the rule blocked the plaintiff's UDTPA action, it limited its holding, stating:

> [T]his Court is careful to note that it is not finding, nor could it find, that the economic loss rule bars all claims of unfair trade practices that allege only economic losses. *See* [*Coker v. DaimlerChrysler Corp..* 617 S.E.2d 306, 318 (N.C. Ct. App. 2005)] (noting numerous North Carolina cases allowing purely economic recovery in unfair trade practices claims). The Court limits its decision to cases such as the instant case involving allegations of a defective product where the only damage alleged is damage to the product itself and the allegations of unfair trade practices are intertwined with the breach of contract or warranty claims.

Bussian, 411 F. Supp. 2d at 627. Unlike Bussian, the instant case does not involve products liability, and, thus, the case has little persuasive effect.

The North Carolina courts have not decided whether the economic loss rule applies to UDTPA claims. See Ellis, 699 F.3d at 787 n.5. In the face of such uncertainty, federal courts have declined to extend the rule to bar UDTPA claims. See id. at 786-87 (declining to affirm the district court's judgment on the ground that the economic loss rule barred a plaintiff's UDTPA claim); Yancey v. Remington Arms Co., LLC, Nos. 1:12CV477, 1:12CV437, 1:10CV918, 2013 WL 5462205, at *10 n.13 (M.D.N.C. Sept.

30, 2013) (declining to rely on the economic loss rule to dismiss plaintiff's UDTPA claims). This court, sitting in diversity, declines to create North Carolina common law by extending the economic loss rule to bar plaintiff's UDTPA claim. See Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 315 (4th Cir. 2007) ("[A]s a court sitting in diversity, we should not create or extend the North Carolina common law").

Further, the court finds that plaintiff's UDTPA claim is sufficient to survive defendant's motion to dismiss. In plaintiff's first case, the court found that his UDTPA claim survived defendant's motion to dismiss where he alleged that defendant terminated the Agreement in retaliation for his opposition to the change in margins, which the court found may constitute an "aggravating circumstance." Martin v. Bimbo Foods Bakeries Distrib., Inc., No. 5:14-CV-17-BR, DE # 41, at 7 (E.D.N.C. July 31, 2014). Similarly, in the case at hand, plaintiff contends that defendant's actions were used to "punish[] him for his actions in opposing the Defendant's abusive business practices toward its distributors . . . ." (DE # 14, at 28; Compl., DE # 1-1, ¶ 29.) Plaintiff further alleges that defendant mistreated him in order to send a message to other independent operators that any opposition to defendant's change in margins would be met with termination of their own agreements and financial damage. (Compl., DE # 1-1, ¶ 29.) Defendant counters by arguing that none of plaintiff's allegations amount to more than a breach of contract claim. (DE # 12, at 16-17.)

Plaintiff has adequately alleged more than a simple breach of contract action. His allegations — namely, that defendant charged him unreasonable expenses in the operation of his route and failed to obtain the best price for his distribution rights in order to retaliate against him and intimidate other distributors — may amount to substantially aggravating circumstances

13

attendant to the alleged breach of contract. Taking plaintiff's allegations as true, he has stated a valid claim for relief under the UDTPA.

## IV. CONCLUSION

Based on the foregoing, defendant's motion to dismiss, (DE # 11), is GRANTED IN PART and DENIED IN PART. Plaintiff's negligence, breach of fiduciary duty, and fraud claims are DISMISSED. The Clerk is DIRECTED to consolidate this case with Case No. 5:14-CV-17-BR and to close this case, No. 5:15-CV-96-BR. The Clerk is also DIRECTED to correct the docket to reflect the name of the proper defendant: Bimbo Foods Bakeries Distribution, LLC. The parties are DIRECTED to make all future filings only under Case No. 5:14-CV-17-BR.

This 24 April 2015.

_____

W. Earl Britt

Senior U.S. District Judge